[No. 30888-6-II. Division Two. December 28, 2004.]

THE STATE OF WASHINGTON, *Appellant*, v. JOHN EDWARD MCENRY, *Respondent*.

920

*Arthur D. Curtis, Prosecuting Attorney,* and *Mark E. Beam, Deputy,* for appellant.

*Mark W. Muenster,* for respondent.

¶1 BRIDGEWATER, J. — The State appeals the trial court's order sealing John Edward McEnry's trial court file. We hold that McEnry failed to demonstrate compelling circum-

stances for sealing as required by GR 15 and *Seattle Times Co. v. Ishikawa.*[1] Also, the trial court erred in relying on RCW 9.94A.640(3) to find a compelling circumstance justifying sealing. We reverse.

¶2 The facts are undisputed. In 1996, John McEnry pleaded guilty to unlawful manufacture of a controlled substance—marijuana and possession of an unlawful firearm. In 1998, McEnry received a certificate and order of discharge pursuant to former RCW 9.94A.220 (2001).[2] In 2003, McEnry moved to vacate his convictions under RCW 9.94A.640 and to seal the court file pursuant to GR 15 and RCW 9.94A.640.

¶3 On August 19, 2003, the parties appeared before the Clark County Superior Court for a hearing on McEnry's motions. The State did not oppose McEnry's motion for vacation but objected to the sealing of McEnry's court file. McEnry argued that compelling circumstances existed for sealing his court file because these records might adversely affect his current or possible future employment. McEnry conceded that he did not expect his employer to conduct a security check, but argued that "we shouldn't have to wait to find out whether it would, because then it's too late to undo the damage." Report of Proceedings (RP) at 9. Additionally, McEnry stated that potential loss of housing based on his court records was "not an issue" because he owns his home. RP at 10.

¶4 In response, the State argued that McEnry failed to show compelling circumstances to seal as required by GR 15 and *Ishikawa*, 97 Wn.2d 30, because any threat of harm to McEnry based on his court file was merely speculative and did not outweigh the public's right to the "open administration of justice." RP at 5. The court granted McEnry's motion and sealed his court file for so long as he does not commit any felony criminal law violations. The court found that McEnry

---

[1] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982).

[2] Now codified as RCW 9.94A.637.

"currently owns his own home, so a records check by a prospective landlord is not anticipated." Clerk's Papers (CP) at 40. Additionally, the court found that McEnry "has had his current employment for 20 years with the Georgia Pacific Corporation" and, "[b]ased on the longevity of his employment," there is no reason to expect that his employer would run a security or records check of him or that a records check would adversely affect his employment. CP at 40.

¶5 Nevertheless, the court concluded that McEnry's unsealed record "may cause him harm in his future personal or business life" and that such harm was inconsistent with RCW 9.94A.640(3), which states that when an offender's conviction is vacated, he or she " 'shall be released from all penalties and disabilities resulting from the offense.' " RP at 41 (quoting RCW 9.94A.640(3)). The court further held that, in order to "fully augment the apparent goal of the vacation statute," compelling circumstances justify sealing McEnry's court file. CP at 42.

¶6 The State contends that the court abused its discretion in sealing McEnry's file because McEnry failed to demonstrate compelling circumstances to seal as required by GR 15 and *Ishikawa*. Specifically, the State challenges the trial court's finding of fact 7 and conclusions of law 1, 2, 3 and 4.[3] McEnry responds that he adequately demon-

---

[3] Finding of fact 7 states:

The defense asserts an unsealed court file may cause defendant to lose housing opportunities, employment opportunities or may cause the loss of business or personal financing, but this has not as of yet happened to him as a result of this conviction.

CP at 41.

Conclusion of law 1 states:

Defendant's conviction record herein shall be vacated. He has met the legal requirements for vacation and the State did not object to vacation. As a result of the vacation of defendant's conviction record and of his otherwise good conduct, the defendant should not suffer any detriment from his convictions herein.

CP at 41.

Conclusion of law 2 states:

An unsealed court file, after a vacation order, subjects defendant to a concern that this unsealed record may cause him harm in his future personal

strated compelling circumstances and that the court properly exercised its discretion under GR 15 in sealing his court file in order to carry out the express purpose of the vacation statute. Br. of Resp't at 1-2. The State is correct.

¶7 Article I, section 10 of the Washington Constitution states: "[j]ustice in all cases shall be administered openly, and without unnecessary delay." RCW 9.94A.640 allows limitation of dissemination of vacated conviction records. It does not authorize sealing of a court file. Neither the constitution nor the statute guarantee or commit that a vacated conviction record will be confidential.

¶8 Under GR 15(c)(1)(B), a court may order the files and records in criminal proceedings to be sealed if it finds that such action is expressly permitted by statute or that there are compelling circumstances requiring such action. We review a trial court's decision to seal records for

---

or business life. This is inconsistent with RCW 9.94A.640(3), which states in part as follows:

" . . . the offender shall be released from all penalties and disabilities resulting from the offense."

CP at 41.

Conclusion of law 3 states:

An offender may be impeded in his or her future life by the fear that a vacated conviction will be discovered to his/her detriment. The statute says that after vacation an offender may say he/she has never been convicted of this crime. However, no provision is made to effectuate this statement by limiting access to the court file. It is certainly possible that an employer or a landlord could review an unsealed court file and see the record of a vacated conviction which might seem inconsistent with the defendant's statement that no conviction existed.

CP at 41-42.

Conclusion of law 4 states:

To fully augment the apparent goal of the vacation statute and to acknowledge the defendant's law abiding conduct subsequent to his conviction, the Court finds this constitutes a compelling circumstance to justify sealing of the court file and/or record herein pursuant to GR 15. The Court is aware of the State's argument that other records or another database may exist which remains unsealed, such as that of the County Auditor or State Department of Corrections pursuant to RCW 9.94A.637(2). However, the Court cannot control these records as it can the Court's own records. The Court finds sealing the court file herein is necessary to provide the defendant protection from all penalties and disabilities as stated in RCW 9.94A.640.

CP at 42.

abuse of discretion. *Dreiling v. Jain*, 151 Wn.2d 900, 907, 93 P.3d 861 (2004). A trial court abuses its discretion when its decision is manifestly unreasonable or is based upon untenable grounds or reasons. *State v. Moran*, 119 Wn. App. 197, 218, 81 P.3d 122 (2003), *review denied*, 151 Wn.2d 1032 (2004). However, if the trial court rested its decision on an improper legal rule, the appropriate course of action is to remand to the trial judge to apply the correct rule. *Dreiling*, 151 Wn.2d at 907. In reviewing a trial court's findings and conclusions, we determine whether substantial evidence supports challenged findings of fact and, in turn, whether the findings support the conclusions of law. *State v. Madarash*, 116 Wn. App. 500, 509, 66 P.3d 682 (2003). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. *Madarash*, 116 Wn. App. at 509. We review questions of law de novo. *Dreiling*, 151 Wn.2d at 908.

¶9 First, the State contends that the trial court failed to properly apply *Ishikawa* in determining whether to seal McEnry's court file. In that case, our Supreme Court considered whether, and in what circumstances, a trial court may seal a petitioner's court records. The court noted that article I, section 10 of the Washington Constitution clearly establishes a public right of access to court proceedings. *Ishikawa*, 97 Wn.2d at 36. But the court held that the public's right of access is not absolute and may be limited to protect other interests. *Ishikawa*, 97 Wn.2d at 36.

¶10 The court expanded its holding in *Federated Publications, Inc. v. Kurtz*, 94 Wn.2d 51, 615 P.2d 440 (1980), and held that, in determining whether to restrict access to criminal hearings or records, the court must conduct a five-part analysis. First, the proponent of closure and/or sealing must make some showing of a compelling interest, and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat to some other important interest." *Ishikawa*, 97 Wn.2d at 37. But where a defendant's Sixth Amendment right to a fair trial is threatened,

only a " 'likelihood of jeopardy' " must be shown. *Ishikawa*, 97 Wn.2d at 37 (quoting *Kurtz*, 94 Wn.2d at 62). Second, anyone present when the closure motion is made must be given an opportunity to object to the restriction. *Ishikawa*, 97 Wn.2d at 38. Third, the court should carefully analyze whether the requested method for curtailing access is the least restrictive means available for protecting the threatened interests. *Ishikawa*, 97 Wn.2d at 38. Fourth, the court must weigh the competing interests of the defendant and the public and consider the alternative methods suggested. *Ishikawa*, 97 Wn.2d at 38. The court's consideration of these issues should be articulated in its findings and conclusions, which should be as specific as possible rather than conclusory. *Ishikawa*, 97 Wn.2d at 38. Fifth, the court's order must be no broader in its application or duration than necessary to serve its purpose. *Ishikawa*, 97 Wn.2d at 39.

¶11 McEnry contends that *Ishikawa* does not apply in this case because that case dealt with the restriction of access to court proceedings and records currently underway. He argues that sealing a file after all judicial proceedings have concluded is fundamentally different from sealing a file during pretrial and trial proceedings, and because all of the proceedings in this case occurred over six years ago, there are no proceedings in which members of the public would have an interest. This argument fails. Firstly, *Ishikawa* specifically referenced the sealing of court records: "If the order involves sealing of records, it shall apply for a specific time period with a burden on the proponent to come before the court at a time specified to justify continued sealing." *Ishikawa*, 97 Wn.2d at 39. Secondly, in *State v. Noel*, 101 Wn. App. 623, 628, 5 P.3d 747 (2000), we considered the sealing of records and our decision is consistent with *Ishikawa*'s requirements—whether the matter is current or past.

¶12 In *Noel*, the defendant's convictions were 12 to 15 years old, and we held that sealing his records would affect the public's right of access. *Noel*, 101 Wn. App. at 628-29.

Moreover, we remanded the case to the trial court, holding "Noel must make some showing of the need for sealing, and the court must weigh the merits of closure against the public's interest in open access." *Noel*, 101 Wn. App. at 628-29. Therefore, the *Ishikawa* analysis applies regardless of whether a defendant's criminal proceedings occurred prior to his or her motion to seal court records.

¶13 Here, McEnry failed to show a "serious and imminent" threat to an important interest—he merely argued that his criminal records could affect his employment. *Ishikawa*, 97 Wn. App. at 37. He conceded that he did not expect his employer to conduct a security or records check on him. Nor did he know whether a records check would even affect his employment. In addition, McEnry conceded that potential loss of housing based on his court records was "not an issue" because he owns his home. RP at 10. Consequently, the record does not support the court's finding that McEnry could be harmed by an unsealed court file.

¶14 Further, the trial court failed to consider the public's competing interest in open access and alternative methods to protect McEnry's interests. McEnry argues that even if the trial court was required to conduct the five-factor analysis under *Ishikawa*, the application of these factors by this court would vindicate the trial court's order. But the determination of a compelling interest is the affirmative duty of the trial court, not this court. *See State v. Bone-Club*, 128 Wn.2d 254, 261, 906 P.2d 325 (1995).

¶15 In addition, the State contends that the trial court erred in concluding that RCW 9.94A.640(3) provides statutory authority to seal McEnry's records. That statute provides in pertinent part:

Once the court vacates a record of conviction . . . *the offender shall be released from all penalties and disabilities resulting from the offense.* For all purposes, including responding to questions on employment applications, an offender whose conviction has been vacated may state that the offender has never been convicted of that crime. Nothing in this section affects or

prevents the use of an offender's prior conviction in a later criminal prosecution.

(Emphasis added.)

¶16 Here, the trial court held that the possible harm caused by McEnry's unsealed convictions was inconsistent with RCW 9.94A.640(3)'s mandate that an offender "shall be released from all penalties and disabilities resulting from the offense" and that sealing was necessary to provide McEnry with these protections. CP at 41. The court concluded that the "apparent goal" of RCW 9.94A.640 constitutes a compelling circumstance justifying sealing of McEnry's court file. CP at 42.

¶17 Although RCW 9.94A.640(3) grants an offender the right to state that he or she has never been convicted, it does not explicitly authorize trial courts to seal an offender's criminal court records without first considering the public's constitutional right of access. We know of no court of record that has interpreted RCW 9.94A.640(3) in this manner, and if the legislature had intended to provide absolute protection from dissemination of court records despite article I, section 10 of the Washington Constitution, it would have so stated.

¶18 McEnry argues that we should apply *State v. Breazeale*, 144 Wn.2d 829, 837-39, 31 P.3d 1155 (2001), which held that RCW 9.94A.640 (formerly codified as RCW 9.94A.230) provides statutory authority for the court to seal an offender's Washington State Patrol records. But *Breazeale* is inapplicable because sealing Washington State Patrol records does not implicate the constitutional right of access; the *Breazeale* court did not analyze article I, section 10 of the Washington Constitution in its determination. Thus, the trial court erred in relying on RCW 9.94A.640(3) to find a compelling circumstance justifying sealing and in entering conclusions of law 1, 2, 3, and 4.

¶19 Because we reverse, McEnry's request for attorney

fees pursuant to RAP 14.2, 14.3, and RCW 4.84.080 is denied.

¶20 Reversed.

QUINN-BRINTNALL, C.J., and MORGAN, J., concur.